■ FREDERICK E. CHALONE et al., Respondents, v STATE OF NEW YORK, Appellant. (Claim No. 57083.)—Appeal from a judgment in favor of claimants, entered November 5, 1975, upon a decision of the Court of Claims. The claimants, husband and wife, lived at Trumansburg, New York, at the time of the accident herein. The claimant registered for evening courses in Elmira College at Elmira, New York. Trumansburg is about 45 miles distant from Elmira. On the evening of September 21, 1972 she drove a 1967 Chevrolet, six-passenger station wagon, from Trumansburg to Elmira and attended classes at Elmira College from 7:00 P.M. to about 10:00 P.M. She left Elmira at about 10:15 P.M. to return to her home in Trumansburg by Routes 17 and 13 to Ithaca, then Route 96 to Trumansburg. The accident which generated this claim occurred at about 10:30 P.M. in the Hamlet of Sullivanville, Chemung County, on a public highway known as New York State Route 13 just north of the intersection of East Sullivanville Road and Route 13. The court found that the State of New York was negligent in the care, repair and maintenance of the highway where the accident occurred, that the said highway was dangerous, and that the State failed to warn the claimant driver of the dangerous condition. The court also found that the State's failure to warn claimant driver was the proximate cause of the accident, and that the claimant driver was at the time exercising due care for her own safety. On this appeal the State claims that the accident was caused by the negligence of claimant, Joy Chalone, in the operation of the car. We conclude and find that the record shows that the claimant, Joy Chalone, was negligent in the operation of the car and that her negligence was the proximate cause of this accident. We also find that any alleged negligence on the part of the State was not a proximate cause of the accident. Therefore, the judgment must be reversed and the claim dismissed. The claimant was driving north on Route 13 at the time of the accident. The State had recently resurfaced Route 13 with blacktop for 1.2 miles south of the scene of the accident and 1.5 miles north thereof. The State had posted no signs indicating that Route 13 had been recently resurfaced. There were no signs indicating low shoulders on the resurfaced portion of the road. Northbound and just before the intersection of Route 13 and East Sullivanville Road, Route 13 has a "flat or mild curve". Both the State's expert and the claimants' expert said that this curve could be safely negotiated at 50 miles per hour. The speed limit in the Hamlet of Sullivanville, the area of the accident on September 21, 1972, was 40 miles per hour. Claimants' exhibits show the 40 mile an hour speed limit sign south of the said intersection on the easterly side of the highway as traffic proceeds north. Claimant driver testified she saw the 40 mile speed limit sign prior to the accident. The State's expert testified that he conducted a ballbank indicator test on this curve and that the ballbank readings in conjunction with a 40 mile per hour speed limit indicated that no curve sign was required to post this curve northbound. It is noteworthy that claimant had completed this curve when she went momentarily off on the apron at the intersection of

East Sullivanville Road. Claimant on cross-examination admitted that before the accident she had driven through Sullivanville in both directions, knew the 40 mile per hour speed limit and was familiar with the location of Sullivanville and further that Route 13 was a well known road to her. South of the said intersection of Route 13 and East Sullivanville Road is an intersection sign. Claimant driver testified that as she was proceeding northward on Route 13 south of the scene of the accident she observed that the road "got really black", "very black"; that this was her contention despite the fact that her lights were on "high beam" and in good operating condition. She had been driving about 50 miles per hour, and had reduced her speed to between 35 and 40 miles per hour as she entered the center of the Hamlet of Sullivanville. She testified she saw the sign indicating the intersection of Route 13 and East Sullivanville Road; it was a dark night; the road dry; there was no traffic behind her or approaching her; that the car went onto "the apron of the East Sullivanville Road where it joins Route 13" and she felt stones kicking up under the fenders. It is evident in the absence of any traffic in either direction that no emergency existed requiring her to go on the shoulder *(Guyotte v State of New York,* 22 AD2d 975, mot for lv to app den 15 NY2d 483). She further testified that the car bumped down into what felt like a pothole, so she "jerked the wheel" to get the car back onto Route 13, went into a skid; she could not get the car to go straight and the car continued on Route 13 and eventually went diagonally across Route 13 into a ditch. The record shows that the car traveled on Route 13 for over 280 feet where the road was straight, almost the length of a football field, before it left the highway and went into an adjacent ditch on the west side of the highway. The claimant, Frederick E. Chalone, examined the area in question on September 22 and 23, 1972 and found tire tracks off the road at the said northeast corner of the intersection of Route 13 and the East Sullivanville Road; that at this intersection the new blacktop on Route 13 was four inches higher than the shoulder; that the tire tracks indicated the car traveled on the shoulder of the road for two and one half to three feet, then came up on the road again and traveled on Route 13 until going into the ditch on the westerly side thereof. The map prepared by the State's expert shows the distance from where claimants' car first left Route 13 to where the car crashed was 282 feet and *that Route 13 from the intersection thereof with the East Sullivanville Road to the point the car went into the ditch is straight.* The claimants' car had power brakes and power steering in good working order. Although the car traveled over 280 feet after it returned from the shoulder to the paved portion of Route 13, the claimant driver did not apply the brakes to reduce the speed of the car or to stop it. Claimant driver explained that her failure to apply the brakes was due to the fact that on a previous occasion when she was driving on a snowy road and the car went into a skid, her husband advised her not to touch the brakes. The record clearly demonstrates that the claimant Joy Chalone was negligent in the operation of the car in failing to use reasonable care to control the car after it returned from the shoulder to the pavement on Route 13. The State's expert engineer testified that the stopping distance on this newly surfaced Route 13, including reaction time, would be 125 feet and yet the claimant driver never tried to stop the car during the time it traveled over 280 feet on Route 13 after returning from the shoulder thereof. The record in its entirety demonstrated that claimant driver failed to use reasonable care to bring the car under control. Under all the circumstances, the driver exercising reasonable care and control should have stopped the car before it went into the ditch. *(Thompson v State of*

*New York,* 154 Misc 707, affd 247 App Div 858). We cannot understand the driving of the claimant, Joy Chalone, in the instant occurrence. But, two things are obvious from this record. The first is that any negligence on the part of the State in not warning motorists of the road construction was not the proximate cause of this accident. Claimant was aware of the condition, had traveled one and one-half miles that night through the condition before the accident with her lights on high beam and had adjusted her speed and driving to accommodate it. The claimant failed to prove her freedom from negligence. Joy Chalone, after having momentarily left the roadway and having returned immediately to it, simply proceeded down the highway nearly 100 yards and drove off the road. This is either gross negligence on her part or, a more reasonable and possible explanation is that she fell asleep. In either case the State should not be held responsible. Judgment reversed, on the law and the facts, and claim dismissed, without costs. Greenblott, J. P., Mahoney, Main, Larkin and Reynolds, JJ., concur.